**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PHYLLIS KING, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HOMEOWNER SOLUTION PROS INC, a Michigan corporation, HOMEOWNER SOLUTION PROS, a Wyoming corporation, HOMEOWNER SOLUTIONS, LLC, a Wyoming limited liability company, DIGITAL RETAIL HOLDINGS, INC., a Michigan corporation, and JOSEPH ROBERT DELFGAUW<br><br>Defendants.<br>______________________________________/ | : | CASE NO. 1:25-cv-00256-RGA<br><br>**DEMAND FOR A JURY TRIAL**<br><br>**DECLARATORY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES REQUESTED** |

## <u>FIRST AMENDED CLASS ACTION COMPLAINT</u>[1]

Plaintiff, PHYLLIS KING ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendants, HOMEOWNER SOLUTION PROS INC., HOMEOWNER SOLUTION PROS, HOMEOWNER SOLUTIONS, LLC, DIGITAL RETAIL HOLDINGS, INC., and JOSEPH ROBERT DELFGAUW (collectively, "Defendants") pursuant to the private right of action provision in the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227(c)(5). On personal knowledge, investigation of counsel, and on information and belief, Plaintiff alleges as follows:

[1] Leave to amend granted June 18, 2026. *See* ECF No. 58 at ¶ 7.

## NATURE OF ACTION

1. In August through November 2024 Defendants sent multiple telemarketing text messages to Plaintiff's personal cellular telephone for the purpose of selling home improvement and repair related products and services to Plaintiff. Defendants sent such text messages despite Plaintiff having registered her telephone number on the national do-not-call registry two years prior in 2022, and without Plaintiff's prior express written consent.

2. Plaintiff brings this action for injunctive relief and statutory damages arising out of and relating to Defendants' conduct in negligently, knowingly, and/or willfully initiating more than one telemarketing telephone call/text message within a 12-month period to Plaintiff and class members on their residential telephone lines which have been registered on the national do-not-call registry, without prior express consent in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2).

## PARTIES

3. Plaintiff is an individual residing in Smyrna, Kent County, Delaware.

4. Defendant Home Owner Solution Pros Inc. is a for-profit corporation incorporated in Michigan with a principal place of business located at 1971E Beltline N.E., 106 Box 113, Grand Rapids, MI 49525.

5. Defendant Digital Retail Holdings Inc. is a for-profit corporation incorporated in Michigan with a principal place of business located at 4370 Chicago Drive SW, Suite 118, Grandville, MI 49418. Digital Retail Holdings, Inc. is the entity that presently operates the homeownersolutionpros.com website from which Homeowner Solution Pros Inc. operated, and is identified on that website as the program operator of short code 33959, the short code from which Plaintiff received the text messages at issue.

6. Defendant Homeowner Solution Pros ("HSP-Wyoming") is a for-profit corporation organized under the laws of Wyoming on June 6, 2025, with a registered and principal office address of 30 N Gould St., Ste. R, Sheridan, Wyoming 82801, which is the address of a commercial registered-agent service. Articles of Dissolution by Shareholders were filed for HSP-Wyoming on December 31, 2025, reciting that dissolution was authorized on December 22, 2025. On information and belief, HSP-Wyoming is owned or controlled by Defendant Delfgauw and was formed to continue Homeowner Solution Pros Inc.'s telemarketing operations. HSP-Wyoming remains subject to suit notwithstanding its dissolution.

7. Defendant Homeowner Solutions, LLC is a limited liability company organized under the laws of Wyoming on August 4, 2023, with a principal office address of 2232 Dell Range Blvd., Suite 245-3173, Cheyenne, Wyoming 82009, which is a commercial mail-forwarding address. Homeowner Solutions, LLC was dissolved on or about October 9, 2024, during the period in which Plaintiff was receiving the text messages at issue. On information and belief, Homeowner Solutions, LLC is or was owned or controlled by Defendant Delfgauw, and its assets and telemarketing infrastructure were used in the transmission of the text messages at issue. Homeowner Solutions, LLC remains subject to suit notwithstanding its dissolution.

8. Defendant Joseph Robert Delfgauw is an individual domiciled in Cape Coral Florida.

9. On information and belief, at all relevant times each Defendant acted as the agent, alter ego, successor, joint venturer, or instrumentality of each other Defendant, and the acts alleged herein were performed within the scope of that relationship and with the knowledge, authorization, or ratification of the other Defendants.

## JURISDICTION AND VENUE

10. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff brings this action pursuant to 47 U.S.C. § 227 *et seq*.

11. This Court has supplemental jurisdiction over Plaintiff's state-law claim pursuant to 28 U.S.C. § 1367(a) because that claim arises from the same case or controversy as Plaintiff's federal claims, namely, Defendants' efforts to place the proceeds of the unlawful telemarketing operation beyond the reach of Plaintiff and the members of the proposed class.

12. This Court has personal jurisdiction over Defendants because Defendants purposefully availed themselves to the Delaware marketplace by directing their telemarketing messages and calls to Delaware and to Plaintiff's cellular telephone, which is located in Delaware where Plaintiff resides.

13. Venue is proper pursuant to 28 U.S.C. § 1391(b) because the telemarketing calls and texts that are the subject of this lawsuit were made to Plaintiff while she was a resident of and present in this District.

## TCPA BACKGROUND

14. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

### A. The National Do-Not-Call Registry

15. 47 U.S.C. § 227(c) of the TCPA requires the Federal Communications Commission ("FCC") to "initiate a rulemaking proceeding concerning the need to protect residential telephone

subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

16. The national do-not-call registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

17. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

18. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the national do-not-call registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

19. The FCC has issued rulings clarifying that in order to obtain an individual's consent, a clear, unambiguous, and conspicuous written disclosure must be provided by the individual. 2012 FCC Order, 27 FCC Rcd. at 1839 ("[R]equiring prior written consent will better protect consumer privacy because such consent requires conspicuous action by the consumer—providing permission in writing—to authorize autodialed or prerecorded telemarketing calls. . . .").

## FACTUAL ALLEGATIONS

20. Each Defendant is a "person" as the term is defined by 47 U.S.C. § 153(39).

21. Defendant Homeowner Solution Pros holds itself out online to be a full-service home improvement company offering products and services including roofing, decking, siding, windows and doors, exterior painting, and bathroom and kitchen remodeling. *See* https://homeownersolutionpros.com/ (last visited Feb. 19, 2025).

22. At no point has Plaintiff sought out or solicited information regarding Defendants' products or services prior to receiving the telemarketing text messages at issue.

23. Plaintiff has never consented in writing, or otherwise, to receive telemarketing calls or text messages from Defendants. Plaintiff has never provided Defendants with her telephone number.

24. Plaintiff's cellular telephone number, 267-XXX-5114, is a residential telephone line.

25. Plaintiff registered this telephone number on the national do-not-call registry in 2022.

26. Despite this, Plaintiff received at least eleven telemarketing text messages from Defendants between August 20, 2024 and November 27, 2024 from the short code 33959, and possibly more calls and/or text messages prior to August 20, 2024 and/or after November 27, 2024. *See* Exhibit A.

27. The text messages marketed Defendants' products and services, including solar roofing assessments, home warranties, and "exclusive deals on repairs, renovations, and other home services." Each text message included links to Defendants' website.

28. Plaintiff alleges direct liability because Defendants sent the text messages to Plaintiff.

29. Plaintiff and all members of the class defined below have been harmed by the acts of Defendants because their privacy has been violated and they were subjected to annoying and harassing calls that constitute a nuisance. The text messages and calls also occupied Plaintiff's and class members' telephone lines, used up their time, and prevented them from receiving legitimate communications.

30. Defendant Delfgauw is a professional telemarketer. He has operated lead-generation and telemarketing businesses for more than a decade under a rotating set of corporate names.

31. Defendant Delfgauw has publicly described his business as follows: that he is in the "lead gen space"; that he owns "a few online brands"; that "we generate leads"; that "we email them, we text them, we call them"; and that "over the course of the past 7 years, our software sends out somewhere around 20 million text messages a month."

32. Upon information and belief, Defendant Delfgauw is or has been an officer, director, or registered agent of approximately 100 corporate entities registered in Michigan and Wyoming. A substantial number of these entities bear names describing telemarketing and dialing functions.

33. A further group of Delfgauw-affiliated entities bear names following a consistent lead-generation naming convention targeting specific consumer demographics, including entities directed at seniors and Medicare recipients, renters and housing-assistance seekers, subprime credit and loan applicants, for-profit education prospects, auto purchasers, and homeowners.

34. These entities share a small number of common addresses in Grand Rapids, Michigan, and a small number of common co-officers.

35. On information and belief, the text messages at issue were transmitted using dialing, messaging, and list infrastructure owned or controlled by Defendant Delfgauw and shared among his affiliated entities, and not by infrastructure independently owned or operated by Homeowner Solution Pros Inc.

36. Homeowner Solution Pros Inc. was incorporated in Michigan on June 25, 2024. Fewer than two months later, on August 20, 2024, it began sending telemarketing text messages

to Plaintiff. On information and belief, a corporation two months old did not independently build a scaled text-messaging operation; Homeowner Solution Pros Inc. was instead a brand deployed on Defendant Delfgauw's existing telemarketing infrastructure.

37. Defendant Delfgauw is aware of the TCPA and of industry consent-verification practices. In a recorded public interview concerning TCPA litigation, Delfgauw discussed that telemarketers should maintain compliant third-party consent-verification records such as TrustedForm and Jornaya. On information and belief, Defendants maintained no such compliant records for Plaintiff or the members of the proposed class.

38. On or about April 2025, a representative of Homeowner Solution Pros Inc. advised Plaintiff's counsel that "Homeowners Solution Pros was sold and dissolved April 1, 2025." No purchaser was identified and no consideration was disclosed.

39. That representation cannot be reconciled with Defendants' own corporate records. Homeowner Solutions, LLC had been dissolved on October 9, 2024, nearly six months before the claimed sale. HSP-Wyoming did not exist until June 6, 2025, more than two months after the claimed sale. On information and belief, no arm's-length sale of Homeowner Solution Pros Inc. occurred on April 1, 2025 or at any other time.

40. On June 4, 2025, Homeowner Solution Pros Inc. appeared in this action through counsel. Two days later, on June 6, 2025, HSP-Wyoming was incorporated in Wyoming under a name nearly identical to that of Homeowner Solution Pros Inc.

41. On December 10, 2025, Homeowner Solution Pros Inc. filed a petition under Chapter 7 of the Bankruptcy Code in the Western District of Michigan. The trustee filed a report of no distribution on January 5, 2026, and the bankruptcy court entered a final decree closing the

case on February 18, 2026. As a corporate debtor, Homeowner Solution Pros Inc. received no discharge. *See* 11 U.S.C. § 727(a)(1). Its liability for the conduct alleged herein survives in full.

42. Twelve days after the Chapter 7 filing, on December 22, 2025, dissolution of HSP-Wyoming was authorized; Articles of Dissolution were filed with the Wyoming Secretary of State on December 31, 2025.

43. On April 8, 2026, Defendant Delfgauw executed a declaration in this action stating that Homeowner Solution Pros Inc. had entered Chapter 7 on December 10, 2025, ceased operations, dissolved, and was insolvent. That declaration cannot be reconciled with the earlier representation that the company had been sold and dissolved on April 1, 2025.

44. Notwithstanding the claimed cessation of operations, the homeownersolutionpros.com website continues to operate from the same URL from which Homeowner Solution Pros Inc. operated before this action was filed, displaying the same website content and the same contractor license number. Except now the Terms of Service reference that Digital Retail Holdings, Inc. is the operator of the website.

45. Plaintiff has also identified evidence that content on the website relied upon to demonstrate consumer consent, including the list of purported marketing partners, was altered after this litigation began.

46. On April 22, 2026, counsel for Homeowner Solution Pros Inc. moved to withdraw, citing unpaid fees and an inability to obtain information necessary to respond to discovery, and acknowledging that the company's failure to cooperate existed "prior to the bankruptcy case as well."

47. On information and belief, Defendant Delfgauw is personally liable both as a direct personal participant in the conduct at issue, as a person who initiated the messages using

telemarketing infrastructure he owns and controls, as a person on whose behalf the messages were sent, and under corporate veil piercing principles.

a. Defendant Delfgauw is directly liable as a person who initiated the text messages at issue. On information and belief, the dialing, messaging, list, and affiliate infrastructure used to transmit the messages is owned and controlled by Delfgauw personally and is shared among his affiliated entities, and Homeowner Solution Pros Inc. was a brand operated on that infrastructure rather than an independent telemarketer. Delfgauw is therefore both a person who initiated the messages and a person on whose behalf they were sent within the meaning of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2).

b. Defendant Delfgauw's relationship to the entity Defendants is eccentric under accepted norms of corporate conduct, such that the messages were in substance sent on his behalf rather than on behalf of any entity. On information and belief: Homeowner Solution Pros Inc.'s registered address is a private mailbox at a commercial mail drop rather than a place of business, while Delfgauw resides in Cape Coral, Florida; Delfgauw is simultaneously the president, director, secretary, and resident agent of Homeowner Solution Pros Inc., such that no independent corporate governance exists; Homeowner Solution Pros Inc. has never filed an annual report or identified any officer or director other than Delfgauw; upon information and belief, Delfgauw is or has been an officer of approximately 100 entities sharing a small number of common addresses and co-officers; a same-named Wyoming corporation was formed two days after Homeowner Solution Pros Inc. appeared in this case through litigation counsel and was dissolved twelve days after it filed for bankruptcy; and the operating assets of the business, including its internet domain, website content, and contractor license number, moved between entities with no documented transaction or consideration.

c. Based on Defendant Home Owner Solution Pros' initial disclosures and information in its recent bankruptcy, Defendants have no employees, so Mr. Delfgauw had direct, personal participation in the calls directed at Plaintiff. Alternatively, even if Defendants have or previously had employees, Mr. Delfgauw would have actively overseen and directed the conduct.

d. Defendant Delfgauw also is liable under veil piercing principles. The companies were and are undercapitalized and insolvent, as demonstrated by their repeated failure to pay their attorneys bills; corporate formalities were not observed, as demonstrated by the fact that Homeowner Solution Pros Inc. filed for bankruptcy one day before the deadline set by this Court's order compelling it to respond to discovery; Delfgauw was and is the only shareholder of the Defendant companies, and on information and belief, he siphoned all funds from his companies to himself; in general, Mr. Delfgauw's companies simply functioned as a façade for himself, as demonstrated by the fact that, historically, when his companies get in legal trouble, he typically files for bankruptcy and/or dissolves the company, and then creates a new one in its place.

48. The homeownersolutionpros.com website remains live and operational as of the filing of this First Amended Complaint. It continues to display the same "Home Owner Solution Pros" name and logo, the same "Veteran Owned Business" tagline, the same toll-free telephone number (855) 211-3928, the same catalog of home-improvement service pages, and the same contractor license number, License # 955410, that it displayed when Homeowner Solution Pros Inc. operated it and when Plaintiff received the text messages at issue.

49. The website's image and logo files are hosted at directory paths dated June and July 2024, the period during which Homeowner Solution Pros Inc. was incorporated, and the footer of every page of the website continues to bear the notice "2024 All Rights Reserved." The website

is, in substance, the same website, running on the same installation, that Homeowner Solution Pros Inc. operated before this action was filed.

50. What has changed is the name of the entity that claims to operate it. The Terms of Service page located at https://homeownersolutionpros.com/terms-of-service/ now states: "Welcome to the Digital Retail Holdings Inc. website ('Website')." That page identifies Digital Retail Holdings Inc. as the owner of all trademarks, trade names, service marks, logos, and brand features associated with the website, and gives its contact address as 4370 Chicago Dr. SW 118, Grandville, MI 49418.

51. Most significantly, the Mobile Terms and Conditions page located at https://homeownersolutionpros.com/mobile-tos/ identifies the text-messaging program operated through the website as follows: "SHORTCODE: 33959" and "PROGRAM NAME: Digital Retail Holdings Inc." Short code 33959 is the same short code from which Plaintiff received at least eleven telemarketing text messages between August 20, 2024 and November 27, 2024.

52. Digital Retail Holdings, Inc. is therefore not a stranger to the conduct alleged in this action. It is the publicly identified operator of the very short-code messaging program through which Plaintiff was texted, operating from the same website, under the same brand, using the same contractor license number, as Homeowner Solution Pros Inc. On information and belief, Digital Retail Holdings, Inc. is owned or controlled by Defendant Delfgauw.

53. Digital Retail Holdings, Inc. is accordingly liable for the conduct alleged herein as a person who initiated the text messages at issue, as a person on whose behalf those messages were made, as a successor to and mere continuation of Homeowner Solution Pros Inc., and as a transferee of assets fraudulently conveyed to place them beyond the reach of Plaintiff and the members of the proposed class.

54. The website bears a further indication that it was constructed from a template used across Defendant Delfgauw's affiliated telemarketing brands. On the privacy policy page located at https://homeownersolutionpros.com/privacy-policy-2/, the contact email address displayed to the consumer is "support@homeownersolutionpros.com," but the underlying hyperlink resolves to "info@theseniorsbestfriend.com," an address associated with The Seniors Best Friend Inc., another entity affiliated with Defendant Delfgauw. On information and belief, this artifact reflects that the homeownersolutionpros.com website was created by copying a template used for other lead-generation brands within Delfgauw's enterprise.

55. On information and belief, the privacy policy page presently accessible at https://homeownersolutionpros.com/privacy-policy-2/ is a replacement for an earlier page located at https://homeownersolutionpros.com/privacy-policy/, which remains referenced in the body of the Terms of Service. The several policy pages on the website were last modified at different times, and the content of those pages relating to consumer consent and marketing partners has changed since this litigation began.

56. HSP-Wyoming is liable for the conduct of Homeowner Solution Pros Inc. as its successor and mere continuation. On information and belief: (a) HSP-Wyoming conducts the same business, residential home-improvement marketing, as Homeowner Solution Pros Inc.; (b) HSP-Wyoming operates from the same internet domain, using the same website content and the same contractor license number, as Homeowner Solution Pros Inc.; (c) HSP-Wyoming uses a name nearly identical to that of Homeowner Solution Pros Inc.; (d) HSP-Wyoming is owned and controlled by the same person, Defendant Delfgauw, who owned and controlled Homeowner Solution Pros Inc.; (e) HSP-Wyoming was formed two days after Homeowner Solution Pros Inc. appeared through counsel in this action; (f) Homeowner Solution Pros Inc. ceased operations at or

about the time HSP-Wyoming commenced them; and (g) HSP-Wyoming did not pay reasonably equivalent value, or any value, for the assets and goodwill it received.

57. Digital Retail Holdings, Inc. is likewise liable for the conduct of Homeowner Solution Pros Inc. as its successor and mere continuation. Digital Retail Holdings, Inc. operates the same website, at the same internet domain, under the same brand name and logo, using the same toll-free telephone number and the same contractor license number, and operating the same short-code text-messaging program on short code 33959, as Homeowner Solution Pros Inc. operated before this action was filed. On information and belief, Digital Retail Holdings, Inc. received these assets from Homeowner Solution Pros Inc. without paying reasonably equivalent value, or any value, and is owned or controlled by Defendant Delfgauw.

58. In the alternative, the transfer of Homeowner Solution Pros Inc.'s operations, internet domain, website content, contractor license number, customer and lead data, trade name, and goodwill to HSP-Wyoming constituted a de facto merger, or a transaction entered into fraudulently for the purpose of escaping liability in this action.

59. Adherence to the corporate form as to these Defendants would sanction fraud, promote injustice, and permit an operator who has caused the transmission of millions of unlawful telemarketing messages to escape all liability through the serial creation and dissolution of interchangeable shell entities.

## CLASS ACTION ALLEGATIONS

60. As authorized by Fed. R. Civ. P. 23(b)(2) or (b)(3), Plaintiff brings this action on behalf of a national class of all other persons or entities similarly situated throughout the United States.

61. Plaintiff proposes the following "National Do-Not-Call Registry Class" definition, subject to amendment as appropriate:

> **National Do-Not-Call Registry Class**: All persons in the United States whose numbers are listed on the national do-not-call registry, and who received two or more telemarketing calls or text messages within any 12-month period from Defendants, or their agents, successors, or predecessors, to their residential telephone number 31 or more days after the telephone number was listed on the national do-not-call registry at any time in the period that begins four years before the filing of the original complaint in this action to the date that class notice is disseminated (the "Class Period").

62. Plaintiff represents, and is a member of, the National Do-Not-Call Registry Class. Excluded from the proposed class are Defendants and any entities in which Defendants have a controlling interest, Defendants' agents and employees, any person who made a transaction with Defendants in the preceding 18 months before receiving a telemarketing call or text message, any person who has executed a valid signed, written agreement between the person and Defendants which states that the person agrees to be contacted by Defendants and includes the telephone number to which the calls may be placed, any Judge and/or Magistrate Judge to whom this action is assigned, and any member of such Judges' staffs and immediate families.

63. **Numerosity.** The potential members of the proposed class likely number at least in the hundreds because of the *en masse* nature of telemarketing calls and text messages. Individual joinder of these persons is impracticable.

64. **Existence and predominance of common questions of law and fact.** Plaintiff and all members of the proposed class have been harmed by the acts of Defendants, including, but not limited to, multiple involuntary telephone and electrical charges, the invasion of their privacy, aggravation, annoyance, waste of time, the intrusion on their telephone that occupied it from receiving legitimate communications, and violations of their statutory rights.

65. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

66. The proposed class, as defined above, is identifiable through telephone records and telephone number databases.

67. There are well defined and nearly identical questions of law and fact common to Plaintiff and members of the proposed class. The questions of law and fact involving the class claims predominate over questions which may affect individual members of the proposed class. These common questions of law and fact include, but are not limited to, the following:

a. whether Defendants systematically made multiple telephone calls and/or text messages to members of the proposed class;

b. whether Defendants made calls and/or text messages to Plaintiff and members of the proposed class without first obtaining prior express written consent to make the calls/texts; and

c. whether members of the proposed class are entitled to treble damages and/or punitive damages based on the willfulness of Defendants' conduct.

68. **Typicality.** Plaintiff's claims are typical of the claims of the proposed class members because they arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories. Specifically, the proposed class members are persons who received telemarketing calls and text messages on their telephones without their prior express written consent. Plaintiff is a member of the proposed class and will fairly and adequately represent and protect the interests of the proposed class as he has no interests that conflict with any of the proposed class members.

69. **Adequacy of Representation.** Plaintiff is an adequate representative of the proposed class because her interests do not conflict with the interests of the proposed class, she will fairly and adequately protect the interests of the proposed class, and she is represented by counsel skilled and experienced in class actions, including TCPA class actions.

70. **Superiority.** Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns the identification of class members, which will be ascertainable from records maintained by Defendants.

71. A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendants to comply with the TCPA. The interests of individual members of the proposed class in individually controlling the prosecution of separate claims against Defendants are small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly more difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

72. Defendants acted on grounds generally applicable to the proposed class, thereby making final injunctive relief and corresponding declaratory relief with respect to the proposed class appropriate on a class-wide basis. Moreover, on information and belief, Plaintiff alleges Defendants' telephone solicitation calls that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

**<u>FIRST CAUSE OF ACTION</u>**
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the National Do-Not-Call Registry Class)**

73. Plaintiff repeats her prior allegations of this Complaint from the preceding paragraphs and incorporates them by reference herein.

74. The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, by making telemarketing calls and/or text messages, except for emergency purposes, to Plaintiff and members of the National Do-Not-Call Registry Class despite their numbers being on the national do-not-call registry in violation of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2).

75. Defendants' violations were willful or knowing.

76. As a result of Defendants' violations, Plaintiff and members of the National Do-Not-Call Registry Class are entitled to treble damages of up to $1,500 for each call and text message made in violation of the TCPA pursuant to 47 U.S.C. § 227(c)(5).

77. Plaintiff and the members of the National Do-Not-Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant from making telemarketing calls and text messages to telephone numbers registered on the national do-not-call registry, except for emergency purposes, in the future pursuant to 47 U.S.C. § 227(c)(5)(A).

78. Plaintiff and members of the proposed National Do-Not-Call Registry Class are also entitled to an award of attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the National Do-Not-Call Registry Class)**

79. Plaintiff repeats her prior allegations of this Complaint from the preceding paragraphs and incorporates them by reference herein.

80. The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, by making telemarketing calls and/or text messages, except for emergency purposes, to Plaintiff and members of the National Do-Not-Call Registry Class despite their numbers being on the national do-not-call registry in violation of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2).

81. As a result of Defendants' violations, Plaintiff and members of the National Do-Not-Call Registry Class are entitled to an award of $500 in statutory damages for each call and text message made in violation of the TCPA pursuant to 47 U.S.C. § 227(c)(5).

82. Plaintiff and the members of the National Do-Not-Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants from making telemarketing calls and text messages to telephone numbers registered on the national do-not-call registry, except for emergency purposes, in the future pursuant to 47 U.S.C. § 227(c)(5)(A).

83. Plaintiff and members of the proposed National Do-Not-Call Registry Class are also entitled to an award of attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**Voidable Transfer**
**Michigan Uniform Voidable Transactions Act, MCL 566.31 et seq.**
**(On Behalf of Plaintiff and the National Do-Not-Call Registry Class)**

84. Plaintiff repeats her prior allegations of this Complaint from the preceding paragraphs and incorporates them by reference herein.

85. Plaintiff and the members of the National Do-Not-Call Registry Class are "creditors" of Homeowner Solution Pros Inc. within the meaning of MCL 566.31, holding "claims" as that term is defined therein. Their claims are contingent, unliquidated, and disputed, and each such claim arose before the transfers described below.

86. Homeowner Solution Pros Inc. is a "debtor" within the meaning of MCL 566.31.

87. On information and belief, Homeowner Solution Pros Inc. transferred to HSP-Wyoming, to Digital Retail Holdings, Inc., and/or to one or more other entities owned or controlled by Defendant Delfgauw, assets including the homeownersolutionpros.com internet domain and website content, its contractor license number, its customer and lead lists and consumer data, access to its telemarketing and dialing infrastructure, its trade name, and its goodwill. The precise timing, structure, and consideration for these transfers are within Defendants' exclusive knowledge and have been withheld from Plaintiff despite discovery requests served on July 25, 2025 and this Court's Order compelling production and responses.

88. These transfers are voidable as to Plaintiff and the members of the National Do-Not-Call Registry Class under MCL 566.34(1)(a) because they were made with actual intent to hinder, delay, or defraud creditors, including Plaintiff and the class. The badges of fraud enumerated in MCL 566.34(2) are present: the transfers were made to insiders, namely entities owned or controlled by Defendant Delfgauw; the debtor retained possession and control of the transferred assets after the transfers, as demonstrated by the continued operation of the same website from the same URL displaying the same license number; the transfers were concealed and were not disclosed to Plaintiff or to this Court; the transfers were made after Plaintiff filed suit and after Plaintiff served discovery seeking information about asset transfers to related entities; the transfers were of substantially all of the debtor's assets; the value of the consideration received by

the debtor was not reasonably equivalent to the value of the assets transferred; and the debtor purported to be insolvent or became insolvent shortly after the transfers were made.

89. In the alternative, the transfers are voidable under MCL 566.34(1)(b) and MCL 566.35(1) because Homeowner Solution Pros Inc. did not receive a reasonably equivalent value in exchange for the transfers and either was engaged in a business for which its remaining assets were unreasonably small, or intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

90. Plaintiff brings this claim in her own right and on behalf of the members of the National Do-Not-Call Registry Class as creditors under Michigan law. Homeowner Solution Pros Inc.'s Chapter 7 case was closed on February 18, 2026 following a trustee's report of no distribution, without any avoidance action having been commenced or administered by the trustee.

91. Plaintiff first discovered, and in the exercise of reasonable diligence could first have discovered, the transfers described above in 2026. This claim is therefore timely under MCL 566.39.

92. Plaintiff and the members of the National Do-Not-Call Registry Class are entitled to avoidance of the transfers to the extent necessary to satisfy their claims, attachment of the transferred assets, an injunction against further disposition of the transferred assets or of the proceeds thereof, a money judgment against the transferees and against any person for whose benefit the transfers were made pursuant to MCL 566.38, imposition of a constructive trust, and such other relief as the circumstances may require under MCL 566.37.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed class, prays for the following relief:

A. Certification of the proposed class;

B. Appointment of Plaintiff as representative of the class;

C. Appointment of the undersigned counsel as counsel for the class;

D. A declaration that Defendants' actions complained of herein violated the TCPA;

E. An order enjoining Defendants from making telemarketing calls and text messages to numbers on the national do-not-call registry, absent an emergency circumstance;

F. An award to Plaintiff and the Class of damages, as allowed by law;

G. An award of attorneys fees, expenses, and costs;

H. A declaration that Homeowner Solution Pros (the Wyoming corporation), and Homeowner Solutions, LLC, and Digital Retail Holdings, Inc. are liable as successors to Homeowner Solution Pros Inc., and that the entity Defendants are the alter egos of Defendant Joseph Robert Delfgauw;

I. Avoidance of the transfers described herein, a money judgment against the transferees and any person for whose benefit the transfers were made pursuant to MCL 566.38, and imposition of a constructive trust upon the transferred assets and their proceeds;

J. An order enjoining Defendants from further transferring or dissipating assets and requiring Defendants to preserve all telemarketing, consent, call-log, and text-message records;

K. An award of pre-judgment and post-judgment interest; and

L. Orders granting such other and further relief as the Court deems necessary, just, and proper.

**JURY DEMAND**

Plaintiff requests a jury trial on all issues so triable.

Dated: July 31, 2026

Respectfully submitted,

**COOCH AND TAYLOR P.A.**

*/s/ R. Grant Dick IV*
R. Grant Dick IV (#5123)
Kevin D. Levitsky (#7228)
1000 N. West Street, Suite 1500
Wilmington, DE 19801
Telephone: 302-984-3800
E-Mail: gdick@coochtaylor.com
klevitsky@coochtaylor.com

Yeremey O. Krivoshey (SBN 295032)
SMITH KRIVOSHEY, PC
(*pro hac vice* granted)
166 Geary Str STE 1500-1507
San Francisco, CA 94108
Telephone: 415-839-7077
Facsimile: (888) 410-0415
E-Mail: yeremey@skclassactions.com

Aleksandr "Sasha" Litvinov (SBN 95598)
SMITH KRIVOSHEY, PC
(*pro hac vice* granted)
867 Boylston Street 5th Floor #1520
Boston, MA 02116
Telephone: 617-377-7404
Facsimile: (888) 410-0415
E-Mail: sasha@skclassactions.com

*Attorneys for Plaintiff and the Proposed Class*